# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DION LEE MCBRIDE, | Civil Action No. 13 – 400 |
| Plaintiff, | |
| v. | Chief Magistrate Judge Lisa Pupo Lenihan |
| ORLANDO HARPER, | ECF No. 17 |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the Motion to Dismiss filed by Defendant Orlando Harper, Warden of the Allegheny County Jail ("ACJ"), (ECF No. 17), and Plaintiff's response in opposition thereto, (ECF No. 23). For the reasons stated herein, Defendant's Motion will be granted.

## I. FACTUAL ALLEGATIONS

Plaintiff initiated this lawsuit on or about March 18, 2013. In his Complaint, Plaintiff alleges a violation of his right to access the courts under the First Amendment to the United States Constitution. First, Plaintiff alleges that the law library at the ACJ is inadequate because it does not provide inmates with access to copy machines. He therefore had to create copies of his motions by hand. Second, Plaintiff alleges that the law library at the ACJ is inadequate because it does not provide inmates with necessary forms. He claims that he did not have the proper forms to alert the court that he did not have counsel in his criminal case. As a result, he claims

1

(1) he was forced to represent himself from August 20, 2012, through December 8, 2012, for the purposes of filing pre-trial motions; (2) the court ignored his handwritten motions and letters because it believed him to be represented even though he was not; and (3) he was appointed an attorney late, which caused a delay in his trial and a violation of his right to a speedy trial under Pa. R. Crim. P. 600.  Third, Plaintiff alleges that the ACJ jail liaisons were told to ignore him, so when he approached one about the issues he was facing with representation in his criminal case, he was told to contact his attorney even though that was the issue at hand.  Plaintiff alleges that the jail liaisons could have contacted the court to inform them about his problem.  Finally, he alleges that the ACJ limits one computer per every 200 inmates and does not provide them with assistance on how to use it.  He claims that the ACJ should provide inmates with access to the same legal materials as those available to the public defenders and district attorneys.  Because it does not, he claims that inmates are at an unfair disadvantage given that public defenders often do not talk to their clients until two hours before trial.  He seeks compensatory relief of $300.00 a day for every day he had to represent himself.  He also seeks to bring this action on behalf of all inmates at the ACJ.

## II.     STANDARD OF REVIEW

Defendant has filed a Motion to Dismiss For Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  In considering a Rule 12(b)(6) motion, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading.  Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in Twombly and Ashcroft v. Iqbal, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Iqbal, 556 U.S. at 675, 679).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." Id. at 210-11; *see also* Malleus, 641 F.3d at 560.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. Twombly, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. Fowler, 578 F.3d at 212; *see also* Guirguis v. Movers

Specialty Servs., Inc., 346 F. App'x. 774, 776 (3d Cir. 2009). In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. Twombly, 550 U.S. at 563 n.8.

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

## III. DISCUSSION

Plaintiff claims that he has suffered a violation of his right to access the courts under the First Amendment. Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817 (1977). As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law. Id. at 827 ("[T]he fundamental constitutional right of

access to the courts requires prison authorities to assist inmates in the preparation and filing or meaning legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."). Two decades later, in 1996, the Supreme Court provided further definition and guidance regarding the scope and nature of this right of access to the courts in Lewis v. Casey, 518 U.S. 343 (1996). In Lewis, the Court eschewed efforts to define this right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims. As the court observed:

> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . . legal assistance program is subpar in some theoretical sense . . . . Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," id., at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the . . . legal assistance program hindered his efforts to pursue a legal claim. Although Bounds itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which Bounds relied, *see* id., at 821-825, 97 S.Ct., at 1494-1497. Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts. Id., at 832, 97 S.Ct., at 1500.

Lewis, 518 U.S. at 351-52.

Thus, following Lewis, courts have consistently recognized two guiding principles which animate access-to-court claims by prisoners. First, such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. *See*, *e.g.*, Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997); Demeter v .Buskirk, No. 03-1005, 2003 U.S. Dist. LEXIS 18133, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); Castro v. Chesney, No. 97-4983, 1998 U.S. Dist. LEXIS 4034, 1998 WL 150961 (E.D. Pa. March 31, 1998). Second, consistent with the Supreme Court's express view that "'we encourage local experimentation' in

5

various methods of assuring access to the courts," Lewis, 518 U.S. at 352, courts have long recognized that public officials have significant discretion in the field and can provide meaningful access to the courts through a wide variety of means. *See*, *e.g.*, Peterkin v. Jeffes, 855 F.2d 1021, 1042 (3d Cir. 1988); Hester v. Morgan, No. 10-309, 2010 U.S. Dist. LEXIS 104385, 2010 WL 3907770, *2 (D. Del. Sept. 29, 2010); Tinsley v. Del Rosso, No. 08-1251, 2008 U.S. Dist. LEXIS 43259, 2008 WL 2236598 (D. N.J. May 30, 2008); Tormasi v. Hayman, No. 07-5683, 2008 U.S. Dist. LEXIS 37554, 2008 WL 1995125 (D. N.J. May 6, 2008); Annis v. Fayette County Jail, No. 07-1628, 2008 U.S. Dist. LEXIS 26721, 2008 WL 763735 (W.D. Pa. March 20, 2008); Hunter v. Schouppe, No. 06-1023, 2007 U.S. Dist. LEXIS 1887, 2007 WL 120030 (W.D. Pa. Jan. 10, 2007).

Here, Plaintiff alleges that the inadequacies of the ACJ law library, and the wrongdoing of the jail liaisons, indirectly caused a violation of his right to a speedy trial under Pa. R. Crim. P. 600. As stated above, he claims that he had to recreate copies of his motions by hand and that there were an insufficient number of computers available for use compared to the number of inmates at the jail. He also claims that the ACJ did not provide training on how to use the computers. However, in both instances, he has failed to allege that these deficiencies resulted in an actual injury as that term is defined by Lewis and its progeny. Typing is one method by which an inmate can pursue the right to access the courts but handwriting is an equally effective method used to pursue the same right. Moreover, inmates do not have a constitutional right to photocopying services or access to a computer. *See* Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997) (noting that inmates have no constitutional right to photocopying services); Russell v. Ohio, 2012 U.S. Dist. LEXIS 33930 (D. Ohio 2012) (finding no First Amendment Right to the use of a computer). Plaintiff has not alleged that he suffered any prejudice by having to

handwrite his motions or copy them by hand, nor has he alleged that having to do so violated his right to access the courts.

Second, Plaintiff claims that the ACJ failed to provide him with the necessary forms to alert the court that he did not have counsel in his criminal case, and, as a result he had to represent himself from August 20, 2012, through December 8, 2012. Plaintiff, however, has failed to identify the specific forms that he needed or state why he was unable to file a motion with the court requesting the appointment of counsel. There is no specific form that a court requires when a criminal defendant makes such a request. Nevertheless, his claim appears to be belied by the state court docket sheet for his criminal cases, of which this Court can take judicial notice. *See*, *supra*, Section II.

Plaintiff was arrested and charged with identify theft, and other related charges, on or about April 25, 2012. *See* Commonwealth v. McBride, MJ-05314-CR-0000122-2012 (Magisterial District Judge 05-3-14). His bail was initially set at $15,000 but later decreased to $5,000 on May 2, 2012. Id. Although he posted bail on May 4, 2012, id., Plaintiff remained in jail pursuant to a detainer that was issued against him for violating the terms of his probation in Commonwealth v. McBride, CP-02-CR-0001101-2007 (Ct. of Common Pleas, Allegheny County).[1] He remained in custody pursuant to that detainer until October 2, 2012, at which time he was formally charged with the offenses stemming from his April 25, 2012 arrest. *See* Commonwealth v. McBride, CP-02-CR-0010837-2010 (Ct. of Common Pleas, Allegheny County). Therefore, Plaintiff's allegation that he had to "represent himself" before this date is incorrect.

---

[1] On September 5, 2012, Plaintiff's privately retained lawyer filed a Motion to Lift the Detainer in Plaintiff's 2007 case. That motion was denied on September 27, 2012, but had it been granted, it appears that Plaintiff would have been released from pre-trial custody, pending arraignment, because he had already posted bail in his 2012 case.

The docket sheet for Plaintiff's 2012 case reveals that he was not appointed a public defender until November 26, 2012; however, at that time Plaintiff was also being held in custody pursuant to the detainer issued against him in his 2007 case, in which he was being represented by a privately retained attorney. It is unclear whether Plaintiff, at his initial appearance for his 2012 case, advised the state court that he already had an attorney, but state court records indicate that Plaintiff was represented by the same privately retained attorney until he was appointed a public defender. Had the state court not been under the (perhaps erroneous) impression that Plaintiff already had representation, then it would have appointed Plaintiff a public defender at his arraignment or shortly thereafter. Nevertheless, Plaintiff's allegation that he was not represented until December 8, 2012, is disproved by the aforementioned state court records.

Plaintiff alleges that all of the above referenced deficiencies, some already proven false, caused a violation of his right to a speedy trial under Pa. R. Crim. P. 600. The Court again takes judicial notice of the docket sheet for Plaintiff's 2012 criminal case, which shows that Plaintiff raised this issue in numerous motions he filed on his own behalf. Despite the fact that he was represented at the time, and such motions were not properly filed,[2] the court considered and denied one of those motions on May 30, 2013.

Plaintiff alleges that the state court was wrong in determining that there was no violation of his right to a speedy trial. He appears to seek a declaration from this Court stating that such a violation occurred. This, however, the Court will not do. Under certain circumstances "district courts must abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with ongoing state

---

[2] "The Constitution does not confer a right to proceed simultaneously by counsel and pro se." United States v. D'Amario, 268 F. App'x 179, 180 (3d Cir. 2008); see also United States v. Vampire Nation, 451 F.3d 189, 206 n.17 (3d Cir. 2006).

proceedings." Lazaridis v. Wehmer, 591 F.3d 666, 670 (3d Cir. 2010) (citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 US. 423, 437 (1982). Plaintiff's criminal proceedings are still ongoing and the Pennsylvania state courts are an adequate forum for him to pursue his speedy trial violation claim. If he is convicted, Plaintiff can raise this issue on appeal to the Pennsylvania Superior Court. This Court does not sit as a super Pennsylvania appellate court to review state court decisions by disgruntled litigants. *See* Exxon Mobile Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005); Robinson v. Proges, 2010 WL 2181697 (3d Cir.).

There are no factual allegations in the Complaint to support a finding that Plaintiff suffered an actual injury based on the alleged inadequacies of the ACJ law library. Therefore, he has failed to sufficiently state a viable access to courts claim. Although a court must allow amendment by the plaintiff in a civil rights case brought under Section 1983 before dismissing pursuant to Fed.R.Civ.P. 12(b)(6), irrespective of whether it is requested, it is not required if doing so would be "inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); *see also* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). A careful review of the record commands that Plaintiff, even garnering all the liberalities that accompany his *pro se* status, fails to state any claims under Section 1983 for which relief may be granted.[3] An appropriate Order follows.

                            **AND NOW**, this 7th day of February, 2014;

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (ECF No. 17) is **GRANTED**.

---

[3] The Court notes that Plaintiff appears to bring this action on behalf of all members at the ACJ but he is not a licensed attorney and thus lacks standing as a *pro se* litigant to defend a case on behalf of another individual in federal court. *See, e.g.,* Schneller v. Crozer Chester Med. Ctr., 276 F. App'x 169, 170 n.1 (3d Cir. 2008); Osei-Afriyie by Osei-Afriyie v. Med. Coll. of Pennsylvania, 937 F.2d 876, 882-83 (3d Cir. 1991); 28 U.S.C. § 1654.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

　　　　　　　　　　　　　　　　　　　　Lisa Pupo Lenihan
　　　　　　　　　　　　　　　　　　　　Chief United States Magistrate Judge

cc:　Dion Lee McBride
　　　91690 3D
　　　Allegheny County Jail
　　　950 Second Avenue
　　　Pittsburgh, PA  15219-3100
　　　*Via First Class Mail*

　　　Counsel of Record
　　　*Via ECF Electronic Mail*